UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-09412-JLS-E                                         Date:  December 31, 2025
Title:  Elizabeth McAlister et al. v. Infinity Insurance Company et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Kelly Davis | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:   ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                                                  Not Present

**PROCEEDINGS:**   **(IN CHAMBERS) ORDER GRANTING MOTION TO REMAND (Doc. 18)**

Before the Court is a Motion to Remand filed by Plaintiffs Elizabeth McAlister and Angela Lisa Perez.[1] (Mot., Doc. 18.) Defendant Infinity Insurance Company opposed, and Plaintiffs replied. (Opp., Doc. 24; Reply, Doc. 25.) The Court finds this matter appropriate for decision without oral argument and therefore VACATES the hearing set for January 9, 2026, at 10:30 a.m. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15. For the following reasons, the Court GRANTS Plaintiffs' Motion.

**I.      BACKGROUND**

On June 15, 2021, Perez was involved in an automobile collision that injured McAlister and her dog. (Ex. A to First Zhordania Decl., State Court Compl. ("Compl.") ¶¶ 10–11, Doc. 1-2.) At the time of the collision, Perez held an automobile liability insurance policy with Infinity that obligated Infinity to defend Perez against—and where appropriate, to settle—claims arising out of Perez's use of an automobile covered by the policy. (*Id.* ¶¶ 7, 9, 12.) After multiple unsuccessful attempts between McAlister and Infinity to settle McAlister's personal injury claims, McAlister filed a lawsuit against Perez in the Los Angeles County Superior Court ("Personal Injury Action"). (*Id.* ¶ 21.) To defend Perez in that action, Infinity retained the law firm Ford, Walker, Haggerty, and

---

[1] The underlying Complaint caption identifies Plaintiff Perez as "ANGELA LISA PEREZ (NEE THOMPSON)."  The parties apparently cannot agree on which surname to use. (Mot. at 4; Opp. at 8.)  In light of the case caption, the Court settles on "Perez."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-09412-JLS-E                                    Date:  December 31, 2025
Title:  Elizabeth McAlister et al. v. Infinity Insurance Company et al.

Behar LLP ("Ford Walker"), including its attorneys Mark Flory and Robert Reisinger (collectively, "Attorney Defendants").  (*Id.* ¶¶ 3, 22.)

In March 2025, following a jury trial in the Personal Injury Action, the state court entered judgment against Perez for $36,420,460.76 (the "Excess Judgment").  (*Id.* ¶ 44.) McAlister and Perez then negotiated a covenant agreement.  (Ex. E to First Zhordania Decl., Assignment of Action and Covenant Not to Execute ("Covenant Agreement") at 3–6, Doc. 1-6.)  In that agreement, McAlister covenanted not to execute the Excess Judgment against Perez's assets or to record the Excess Judgment as a lien on Perez's assets.  (*Id.* at 4.)  In exchange, Perez assigned to McAlister "all claims and causes of action which [Perez] may now have or hereafter acquire against Infinity based on Infinity's (including its agents') handling of the Personal Injury Claim and Personal Injury Action . . ., save and except any claims that are not assignable under California law."  (*Id.*)

On September 10, 2025, McAlister and Perez jointly filed this action against Infinity and the Attorney Defendants in the Los Angeles County Superior Court.  (*See* Compl. at 2.)  In their complaint, McAlister and Perez advance four causes of action against Infinity and the Attorney Defendants, respectively.  (*See id.* ¶¶ 51–104.) Specifically, McAlister asserts two contract-based causes of action against Infinity, (*id.* ¶¶ 51–71), and Perez asserts two causes of action for professional negligence and breach of fiduciary duty against the Attorney Defendants, (*id.* ¶¶ 72–104).

On October 2, 2025, Infinity timely removed this action to federal court on the basis of diversity jurisdiction.  (Notice of Removal ¶ 4, Doc. 1.)  In its removal notice, Infinity asserts that it is a citizen of Indiana and Alabama, and acknowledges that Plaintiffs and the Attorney Defendants are citizens of the same state and thus lack diversity of citizenship.  (*Id.* ¶¶ 6–9; *cf.* Compl. ¶¶ 1, 3 (alleging that McAlister, Perez, and the Attorney Defendants are all citizens of California).)  Despite this lack of diversity, Infinity maintains that its removal was proper and that the Court possesses jurisdiction to entertain this action because "[t]he Attorney Defendants have been fraudulently joined . . ., and their presence does not defeat diversity jurisdiction."  (*Id.* ¶ 9.)  Plaintiffs now move to remand this action to state court.  (Mot.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-09412-JLS-E                                        Date:  December 31, 2025
Title:  Elizabeth McAlister et al. v. Infinity Insurance Company et al.

## II.  **LEGAL STANDARD**

A defendant may remove to federal court an action over which the court has original jurisdiction.  28 U.S.C. § 1441(a).  However, "[i]t is to be presumed that a case lies outside [the] limited jurisdiction [of the federal courts]."  *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Given the "strong presumption against removal jurisdiction[,] . . . the defendant always has the burden of establishing that removal is proper."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  Any ambiguity regarding the propriety of removal must be resolved in favor of remand.  *Id.*; *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

When the basis for removal is diversity jurisdiction, the removing defendant must establish that the amount in controversy exceeds $75,000 and that there is "complete diversity of citizenship" between the parties.  *Hunter*, 582 F.3d at 1043; *see* 28 U.S.C. § 1332(a)(1).  To establish complete diversity, the defendant must show that no defendant is a citizen of the same state as any plaintiff.  *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998).  If, however, the defendant shows that a non-diverse defendant has been "fraudulently joined" in the action, a court may disregard the citizenship of that non-diverse party in determining whether diversity jurisdiction exists.  *United Comput. Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 761–62 (9th Cir. 2002) (citation omitted).

To show fraudulent joinder, the defendant must demonstrate either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *Hunter*, 582 F.3d at 1044 (citation omitted).  Under the second pathway, the governing standard is not whether the plaintiff states a claim for relief or will ultimately prevail, but whether "there is no possibility that the plaintiff could demonstrate a viable claim against the fraudulently joined defendant."  *GranCare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 549, 552 (9th Cir. 2018).  This standard imposes a "heavy burden" on the defendant.  *Id.* at 548.

In assessing whether the defendant has met its heavy burden, a court must resolve "all disputed questions of fact and all ambiguities in the controlling law . . . in the plaintiff's favor."  *Nasrawi v. Buck Consultants, LLC*, 776 F. Supp. 2d 1166, 1169–70

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-09412-JLS-E                                         Date: December 31, 2025
Title: Elizabeth McAlister et al. v. Infinity Insurance Company et al.

(E.D. Cal. 2011).  If after doing so the court determines that the plaintiff's complaint is deficient, the court must also consider "whether [the] deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." *GranCare*, 889 F.3d at 550.  If there is a non-fanciful possibility that the plaintiff can cure the deficiency, "the case must be remanded." *Wilson-Condon v. Allstate Indem. Co.*, 2011 WL 3439272, at *2 (C.D. Cal. Aug. 4, 2011) (citation omitted).

### III. <u>ANALYSIS</u>

Plaintiffs move to remand this action to state court.  (Mot.)  They assert that the Court lacks subject-matter jurisdiction to entertain this state-law action because Plaintiffs and the Attorney Defendants are non-diverse.  (*Id.* at 8–13.)  Infinity opposes, asserting that the Attorney Defendants' citizenships should be ignored because they were fraudulently joined in this action.  (*See generally* Opp.)  In support, Infinity argues that Perez lacks standing to maintain her claims against the Attorney Defendants, (Notice of Removal ¶ 16), or, alternatively, Perez's claims are precluded by the Covenant Agreement, (Opp. at 14–25).  Consequently, Infinity contends, there is no possibility Perez could state a viable cause of action against the Attorney Defendants.  (Opp. 13–14.)

In light of the parties' respective arguments, the Court resolves the fraudulent-joinder question in three steps.  First, the Court addresses Infinity's standing argument to determine whether Perez retains a right to sue the Attorney Defendants.  Second, the Court examines whether the Covenant Agreement operates as a complete bar to Perez's claims.  And third, the Court analyzes whether it is possible Perez can establish the actual damages required to support her professional negligence and breach of fiduciary duty claims against the Attorney Defendants.

#### A. Perez's Standing

The Court begins, as it must, with Infinity's threshold standing argument.  *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) (explaining that courts have a continuing "independent obligation to ensure they do not exceed the scope of their jurisdiction").  Infinity contends that Perez lacks standing to maintain her claims against the Attorney Defendants because she assigned her claims to McAlister under the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-09412-JLS-E                                                    Date: December 31, 2025
Title: Elizabeth McAlister et al. v. Infinity Insurance Company et al.

Covenant Agreement. (Notice of Removal ¶ 16.) Perez asserts that she did not assign McAlister any claims other than those she has or may have against Infinity. (Mot. at 9.)

"The [c]ourt's task in interpreting the scope of an assignment is to enforce the intent of the parties." *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1283 (9th Cir. 1983); *accord Nat'l Rsrv. Co. of Am. v. Metro. Tr. Co. of Cal.*, 17 Cal. 3d 827, 833 (1941). If the court determines that "a claim has been assigned, . . . the assignee is the owner [of the claim] and the assignor . . . lacks standing to sue on it." *In re Wellpoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 897 (C.D. Cal. 2012).

The Covenant Agreement provides that Perez assigned to McAlister "all claims and causes of action which [Perez] may now have or hereafter acquire against Infinity based on Infinity's (including its agents') handling of the Personal Injury Claim and Personal Injury Action . . ., save and except any claims that are not assignable under California law." (Covenant Agreement at 4.) The text of this assignment is unambiguous in scope. By its terms, Perez transferred to McAlister only those claims directed "against Infinity." (*Id.*) The assignment language does not extend to claims Perez has against any other party. Nor does it purport to release or extinguish claims Perez has against her former attorneys. Tellingly, Infinity points to no specific provisions in the Covenant Agreement that suggests differently and offers no argument or analysis to establish otherwise.

Even if Perez had purported to assign away her claims against the Attorney Defendants, California law would prohibit the Court from giving effect to any such assignment as a matter of public policy. *Kracht v. Perrin, Gartland & Doyle*, 219 Cal. App. 3d 1019, 1023 (1990) ("It is now well settled that under California law, a former client may not voluntarily assign his claims for legal malpractice against his former attorneys."); (*see* Covenant Agreement at 4 (excluding from assignment "claims that are not assignable under California law")). Accordingly, the Court concludes that Perez did not assign away her claims against the Attorney Defendants and that she therefore has standing to maintain those claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-09412-JLS-E                                          Date:  December 31, 2025
Title:  Elizabeth McAlister et al. v. Infinity Insurance Company et al.

### B.     Effect of the Covenant Agreement on Perez's Claims

Infinity next contends that the Covenant Agreement operates as an outright release that both insulates Perez from the Excess Judgment and eliminates any possibility Perez could state a viable claim against the Attorney Defendants.  (*See* Opp. at 15–24.)  Plaintiffs counter that the Covenant Agreement does not extinguish the Excess Judgment or eliminate Perez's damages for claims against the third parties who allegedly caused the judgment.  (Mot. 9–11; Reply at 7–12.)

Under California law, a covenant not to execute does not automatically operate as a release or satisfaction of a debt.  *Ivy v. Pac. Auto. Ins. Co.*, 156 Cal. App. 2d 652, 662 (1958).  Nor does such a covenant automatically eliminate a personal judgment against a party to that covenant or extinguish that party's claims against third parties who caused the judgment.  *Id.*; *Critz v. Farmers Ins. Grp.*, 230 Cal. App. 2d 788, 803 (1964), *disapproved on other grounds by Crisci v. Sec. Ins. Co. of New Haven*, 66 Cal. 2d 425 (1967).  Because a covenant not to execute does not erase the underlying judgment, it "does not fully protect" the party against whom the judgment was entered from the collateral adverse effects of the judgment.  *Consol. Am. Ins. Co. v. Mike Soper Marine Servs.*, 951 F.2d 186, 191 (9th Cir. 1991) (applying California law); *see Ivy*, 156 Cal. App. 2d at 662; *Critz*, 230 Cal. App. 2d at 803.  Although a covenant not to execute protects an insured from direct liability for the judgment, the insured nonetheless remains exposed to "a judgment against [them] that could have collateral adverse effects in several respects, including on [their] future credit" and their ability to engage in business transactions.  *Id.* at 191–92 (first citing *Critz*, 230 Cal. App. 2d at 803; and then citing *Ivy*, 156 Cal. App. 2d at 661–62).

These principles are directly applicable here.  The Covenant Agreement restricts McAlister's ability to satisfy the Excess Judgment against Perez from her personal assets.  (*See* Covenant Agreement at 4.)  But the Covenant Agreement did not erase the underlying personal judgment against Perez.  *Ivy*, 156 Cal. App. 2d at 662; *Critz*, 230 Cal. App. 2d at 803.  Although McAlister's covenant not to execute limited Perez's personal financial exposure for the judgment, the judgment still stands.  *Abelson v. Nat'l Union Fire Ins. Co.*, 28 Cal. App. 4th 776, 784 (1994).  As do the collateral adverse

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-09412-JLS-E                                                                 Date:  December 31, 2025
Title:  Elizabeth McAlister et al. v. Infinity Insurance Company et al.

consequences that attend that judgment, including impacts on Perez's credit or creditworthiness.  *Consol. Am. Ins. Co.*, 951 F.2d at 191–92; *see Madrigal v. Allstate Ins. Co.*, 2016 WL 6694968, at *5 (C.D. Cal. May 19, 2016) ("[A]s a matter of common knowledge, . . . a judgment against the insured 'could have collateral adverse effects in several respects'. . . .").  Because these potential collateral harms exist independent of whether McAlister can execute on Perez's assets, the Covenant Agreement does not fully protect Perez, displace her potential harms, or preclude her from seeking a remedy for those harms in an action against the parties who allegedly caused them.  The Court therefore cannot conclude that Perez's claims, predicated on the extant Excess Judgment and its collateral harms, are wholly precluded by the Covenant Agreement.  *See Ivy*, 156 Cal. App. 2d at 662–63 (holding that insured could seek relief against insurer and insurer-retained attorney despite covenant not to execute); *Critz*, 230 Cal. App. 2d at 803 (stating that covenant not to execute "did not . . . extinguish [the insured's] claim . . . against the carrier").

Infinity offers a different view.  It attempts to sidestep the result above by invoking *Yanchor v. Kagan*, 22 Cal. App. 3d 544 (1971), for the proposition that a covenant not to execute operates as an outright release in the case of a single judgment debtor like Perez.  (Opp. at 21–24.)  Infinity's argument fails for two reasons.

First, *Yanchor* does not stand for the proposition that Infinity claims.  In *Yanchor*, the court addressed the narrow procedural question of whether a judgment creditor must acknowledge satisfaction of a judgment where a single judgment debtor entered a covenant not to execute and requested satisfaction of judgment under former California Code of Civil Procedure section 675.  *Yanchor*, 22 Cal. App. 3d at 552.  The court held that if the judgment debtor makes a "request to enter satisfaction of judgment . . . in the form of a motion, pursuant to [section 675]," then a covenant not to execute "may be given the effect of an outright release."  *Id.* at 550, 552.  By its own terms, *Yanchor* confirms that a covenant not to execute does not automatically operate as a release or satisfaction of a judgment.  *Id.* at 552 ("[W]e see no reason why a covenant not to execute . . . may not be given the effect of an outright release whenever a request to enter satisfaction of judgment is put in the form of a motion.").  Moreover, *Yanchor* expressly acknowledges that "[*Ivy* and *Critz*] establish that a covenant not to execute does not have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-09412-JLS-E                                              Date:  December 31, 2025
Title:  Elizabeth McAlister et al. v. Infinity Insurance Company et al.

a self-executing effect; [i].e., the judgment exists." *Id.* at 552.  The existence of that judgment is enough to infer the possibility of collateral adverse impacts on a sole judgment debtor like Perez.  *See Consol. Am. Ins. Co.*, 951 F.2d at 191–92; *Madrigal*, 2016 WL 6694968, at *5.  To the extent Infinity suggests that *Yanchor* affects the validity of *Ivy* or *Critz*, that suggestion lacks merit.  *See Garza v. Asbestos Corp., Ltd.*, 161 Cal. App. 4th 651, 659 n.5 (2008) ("[P]rinciples of stare decisis do not permit [one intermediate appellate court] to 'overrule' the[] decision [of another intermediate appellate court].").

Second, the Covenant Agreement contains no release or satisfaction language.  (*See generally* Covenant Agreement.)  If McAlister's covenant not to execute automatically released or satisfied Perez's claims against Infinity or the Attorney Defendants under these circumstances, Perez could never have assigned McAlister "anything more than a cipher."  *Lexington Ins. Co. v. Devaney*, 50 F.3d 15, 20 (9th Cir. 1995).  In that case, by assigning her rights in return for McAlister's covenant, Perez would effectively extinguish the very rights she assigned to McAlister in consideration for McAlister's covenants.  *Id.*  Infinity points to nothing in the Covenant Agreement that suggests Perez or McAlister intended that result.

Finally, Infinity attempts to distinguish this case from *Ivy* by arguing that Perez received more protection than the insured in *Ivy* because McAlister covenanted both not to execute and not to record the Excess Judgment.  (*See* Opp. at 22–23.)  Infinity does not adequately explain, and the Court does not see, how this distinction makes any material difference.

McAlister's covenant not to record is little more than a mechanism that prevents her from recording the Excess Judgment as a lien on Perez's assets.  (*See* Covenant Agreement at 4.)  Like the covenant not to execute, the covenant not to record does not eliminate the Excess Judgment's existence as a matter of public record or vitiate the potential collateral adverse consequences that flow from that judgment.  *See Anderson v. Nationwide Mut. Ins. Co.*, 339 F. Supp. 3d 933, 942 (E.D. Cal. 2018) (acknowledging "[t]he reputational harm accompanying the stigma of a multi-million dollar judgment, the fact that it is available to the public, and its impact on creditworthiness").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-09412-JLS-E                                                                  Date:  December 31, 2025
Title:  Elizabeth McAlister et al. v. Infinity Insurance Company et al.

     In sum, the Court cannot conclude that the existence of the Covenant Agreement makes it impossible under settled principles of California law that Perez can maintain a viable claim against the Attorney Defendants.  At a minimum, any tension between *Ivy* and *Critz* on one hand and *Yanchor* on the other creates an ambiguity in California law that, at this stage, the Court must resolve in Plaintiffs' favor.  *Nasrawi*, 776 F. Supp. 2d at 1169–70; *see Smith v. S. Pac. Co.*, 187 F.2d 397, 402 (9th Cir. 1951) (explaining that doubtful questions of state law "should be tried in the state court and not . . . in removal proceedings").  Accordingly, Infinity fails to establish that Perez's claims against the Attorney Defendants are categorically precluded by Covenant Agreement.

     **C.**    **Perez's Damages**

     The parties do not dispute that actual damages are an essential element of Perez's professional negligence and breach of fiduciary duty claims against the Attorney Defendants.  *See Spieron, Inc. v. Americanized Benefit Consultants, Ltd.*, 2018 WL 6844719, at *3 (C.D. Cal. Oct. 22, 2018).  To this end, Perez asserts multiple damages theories, including credit impairment, in support of her claims.  (Compl. ¶ 99; *see id.* ¶ 81.)  Infinity contends that Perez cannot recover under any theory.  (Opp. at 15.)

     Under the fraudulent-joinder analysis, the removing defendant must show that there is no possibility the plaintiff could establish a viable cause of action against the non-diverse defendants.  *GranCare*, 889 F.3d at 549–50.  In determining whether a defendant has met its burden, courts may "pierce the pleadings and conduct a summary inquiry" to identify only "discrete and undisputed facts that would preclude [the] plaintiff's recovery against the in-state defendant."  *Hunter*, 582 F.2d at 1044 (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573–74 (5th Cir. 2004) (en banc)).

     Courts have long recognized that an outstanding personal judgment can expose an insured to collateral harms, including impacts on their credit or creditworthiness.  *Ivy*, 156 Cal. App. 2d at 662–63; *Consol. Am. Ins. Co.*, 951 F.2d at 191.  More recently, the court in *Anderson* acknowledged that "the reputational harm accompanying the stigma of a multi-million dollar judgment, the fact that it is available to the public, and its impact on creditworthiness" persist, "irrespective of whether [the insured] faces financial exposure to that . . . judgment."  *Anderson*, 339 F. Supp. 3d at 942.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-09412-JLS-E                                                      Date:  December 31, 2025
Title:  Elizabeth McAlister et al. v. Infinity Insurance Company et al.

     Against this legal backdrop, Perez alleges that she "has suffered and continues to suffer . . . 'credit disability'" as a result of the Excess Judgment caused by the Attorney Defendants' conduct in the Personal Injury Action.  (Compl. ¶ 99.)  Infinity does not dispute that harm to credit or creditworthiness is cognizable as actual damages and may support Perez's claims.  Instead, Infinity challenges the factual basis for Perez's damages theory, arguing that credit impairment in this instance is factually impossible.  (Opp. at 16–18.)  Specifically, Infinity contends that (1) the covenant not to record prevents the Excess Judgment from appearing as a lien in county records; (2) the three nationwide credit reporting companies—Equifax, Experian, and TransUnion—ceased reporting civil judgments in 2018; and (3) Infinity's November 2025 LexisNexis search revealed no judgments against Perez.  (*Id.*; *see* Ex. 10 to Second Zhordania Decl., Smartlinx Person Report, Doc. 24-10.)  Although Infinity plausibly suggests Perez may not sufficiently plead credit harm, its arguments do not establish that there is no possibility Perez could establish the harm required to state a viable claim against the Attorney Defendants.

     First, the LexisNexis search Infinity conducted in November 2025 represents but a single snapshot from one database taken mere months after the Excess Judgment was entered.  It does not establish that the Excess Judgment—a publicly available court record—is invisible to all creditors or lenders.  That a $36.4 million judgment exists in public records and may be discovered by entities conducting due diligence, such as creditors, lenders, and landlords, supports the inference of at least the possibility of credit impairment.  *See Consol. Am. Ins. Co.*, 951 F.2d at 191; *Anderson*, 339 F. Supp. 3d at 942.

     Second, Plaintiffs present a reasonable competing account of how judgment information flows to creditors and lenders in 2025.  Although the three major credit bureaus might have ceased reporting civil judgments to comply with the National Consumer Assistance Plan, Plaintiffs contend that specialty vendors, including LexisNexis, still compile and sell lien-and-judgment reports to creditors, landlords, and other entities, which are "routinely used in risk assessments."  (Reply at 13–14.)  Plaintiffs support this assertion with information indicating that judgments are public

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-09412-JLS-E   Date: December 31, 2025
Title: Elizabeth McAlister et al. v. Infinity Insurance Company et al.

records that remain accessible to lenders who "often conduct public record searches that go beyond a standard credit report." (*Id.* at 14.)

The parties' competing accounts demonstrate that there remain material outstanding and disputed factual questions concerning the effect of the Excess Judgment on Perez's credit or creditworthiness. These questions include whether the Excess Judgment reaches creditors or lenders through specialty vendor databases, whether creditors or lenders perform independent public record searches, and whether the discovery of a multimillion-dollar judgment affects creditor or lender decisions to extend credit to a judgment debtor. Evidence addressing current lending practices, credit evaluation standards, and the role of specialty reporting services is required to answer these questions. But no such evidence exists on the record before the Court. Even if the record were complete with that evidence, reconciling the parties' competing positions using that evidence would effectively convert these jurisdiction-based removal proceedings into merits-based summary judgment proceedings, which the Court cannot do. *Lakatos v. RLI Corp.*, 736 F. Supp. 3d 796, 802 (C.D. Cal. 2024) ("[A] searching inquiry into the merits of a case when screening for fraudulent joinder is improper."). At this stage, it is enough that the presence of these disputed factual questions creates precisely the type of uncertainty that must be resolved in Plaintiffs' favor. *See Nasrawi*, 776 F. Supp. 2d at 1169–70.

Infinity's remaining arguments fare no better. Infinity contends that Perez's credit-impairment allegations are "conclusory" because she does not plead specific facts about how her credit was impaired. (Opp. at 7, 16.) This argument goes to the sufficiency of Perez's allegations. "But the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent." *GranCare*, 889 F.3d at 549. Because Infinity's arguments concern the sufficiency of the Perez's allegations rather than the possible viability of her claims against the Attorney Defendants, they do not establish fraudulent joinder. *Id.* at 552; *cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("[T]he absence of a valid . . . cause of action does not implicate subject-matter jurisdiction. . . .").

Even if the Court were to accept Infinity's sufficiency arguments, the Court must also consider "whether a deficiency in the complaint can possibly be cured by granting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-09412-JLS-E                      Date: December 31, 2025
Title: Elizabeth McAlister et al. v. Infinity Insurance Company et al.

the plaintiff leave to amend." *Id.* at 550. Given the recognized possibility that an outstanding judgment can impair a judgment debtor's credit or creditworthiness notwithstanding a covenant not to execute, there is at least a non-fanciful possibility that Perez could allege additional facts regarding credit impairment that could cure any pleading deficiencies Infinity identifies in the complaint. *Wilson-Condon*, 2011 WL 3439272, at *2.

In sum, Infinity fails to meet its burden to demonstrate there is no possibility that a state court could find Perez's credit-impairment theory provides a sufficient damages basis to support her professional negligence and breach of fiduciary duty claims against the Attorney Defendants. Because it is possible Perez could state viable claims against the Attorney Defendants on that basis, the Court need not address Infinity's remaining arguments concerning Perez's alternative damages theories. Accordingly, because Infinity fails to overcome the presumption against removal and to prove that the Attorney Defendants were fraudulently joined, there is no complete diversity between the parties and the Court lacks subject-matter jurisdiction to entertain this action.

### IV. CONCLUSION

For these reasons, the Court GRANTS Plaintiffs' Motion and REMANDS this action to the Los Angeles County Superior Court, Case No. 25CHCV03242.

Initials of Deputy Clerk: kd